The plaintiff sued to recover of the defendant $2,000.00 which she claims was due her as beneficiary under an insurance policy issued to her husband. The policy was for $1,000.00, with a double indemnity clause promising to pay an additional thousand dollars for bodily injury through external, violent and accidental means resulting in death.
The policy was purchased in March, 1938. The plaintiff alleges her husband died on 17 December, 1938, in consequence of injury brought about solely through such external, violent and accidental means; that proof was duly made to the defendant and that defendant refused to pay the claim; and demands judgment for the $2,000.00 and costs.
The defendant, answering, admitted the issuing of the policy, and that the stipulated payment therein was $1,000.00, with an additional $1,000.00 to be paid in case the death was by accidental injury, as *Page 565 
described. It set up the defense that the policy was not in force at the time of the death, by reason of the nonpayment of the premiums.
The defendant alleges that it is now and was at the time complained of "a fraternal benefit society," with a lodge system, a ritualistic form of work and a representative form of government, without capital stock, transacting its business without profit and for the sole benefit of its members and their beneficiaries. That as such, defendant had a Constitution, Laws, and By-Laws, made a part of the certificate of insurance, which By-Laws were in full force and effect from the date of the application of membership of the insured till the time of his death, and that such By-Laws amongst other things provided that if the insured "should die while engaged in or in consequence of the violation of the laws of the State or of the United States, or any other province or nation, whether he is at the time sane or insane, the certificate shall be null and void and of no effect." Other sections of the By-Laws quoted in the answer refer to the payment of premiums and suspension from membership. It is provided in the By-Laws that "if he fails to make any such payment on or before the last day of the month he shall thereby become suspended, his beneficiary certificate shall be void, the contract between such person and the Society shall thereby completely terminate, and all moneys paid on account of such membership shall be retained by the Society as his liquidated proportionate part of the cost of doing business and the cost of the protection furnished on the life of said member from the delivery of his certificate to the date of his suspension."
It is further provided that should a person become suspended for not making annual payments or installments thereof, he is not entitled to any benefits of the Society, shall not receive the password, or participate in any of the business or social proceedings of the Camp.
Section 65 is quoted from the answer as follows: "Section 65. Any person who has become suspended for not making any annual payment or installment thereof may within three calendar months from the date of his suspension again become a member of the Society by the payment of the delinquent installment or installments, provided he is in good health at the time of such payment and remains in good health for thirty days thereafter. Whenever installments of payments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such installments when so paid after he has become suspended for not making payments shall be received and retained without waiving any of the provisions of this section or of these laws until such time as the Secretary of the Society *Page 566 
shall have received actual, not constructive or imputed, knowledge that the person was not in fact in good health when he attempted to again become a member. Provided that the receipt and the retention of payment of such installments in case such person is not in good health shall not make such person a member or entitle him or his beneficiary or beneficiaries to any rights whatever."
Other provisions of the By-Laws make any payment of dues after suspension for nonpayment constitute a guaranty that the insured is in good health, and provide that no custom of the Camp shall have the effect of "changing, modifying, waiving, or foregoing such laws or requirements."
The defendant sets up a further defense that plaintiff's husband was at the time of his death driving an automobile in a reckless and unlawful manner, with only one headlight and on the left-hand side of the highway, was transporting a quantity of illicit liquor, and received his injury and death in consequence of such violation of law, and that recovery is, therefore, barred under the pertinent section of the By-Laws above cited.
The plaintiff offered in evidence the admissions made in the defendant's answer, after which plaintiff testified that her husband was dead and that the proper death certificate had been forwarded to defendant, and identified the receipts for the premiums.
The receipts showed that sometimes payments were made within the time specified in the policy, others a short time afterwards, and in one instance two payments were made at the same time and before one of them was due. The last payment appears to have been made on 8 December preceding the death of the insured on the 17th. Further testimony of the plaintiff showed that the grace days on this premium expired on 30 November.
The plaintiff was asked how her husband had died and what caused his death. This was excluded upon objection and the plaintiff excepted.
Plaintiff further sought to show by a Highway Patrolman what was the condition of the road, the car of the deceased, and all that he saw when he got to the point of the accident. On motion of defendant this was excluded and plaintiff excepted.
Another witness, Myron Barrett, was asked whether when he saw deceased he was in the car with his head hanging out. This was excluded on objection of defendant and plaintiff excepted.
Plaintiff did succeed in getting in evidence, however, from the Highway Patrolman that when he found the deceased he was in an old model Essex Roadster, with his feet hanging between the clutch and brake and his shoulders lying on the hard surface; that the door was open and his feet were still in the car hanging on the foot pedals and his head "was busted across one side." He was dead. This was corroborated by another witness and by the coroner. *Page 567 
Plaintiff then introduced the insurance policy or certificate.
At the conclusion of the plaintiff's evidence the defendant moved for judgment as of nonsuit and the court allowed the same only as to the double indemnity clause, under which $1,000.00 was to be paid upon death by external accident. Plaintiff excepted.
The defendant put on evidence which, under the rules of the court relating to nonsuit, need not be here considered.
At the conclusion of all the evidence a further motion for judgment as of nonsuit was made and allowed, and plaintiff excepted and appealed, assigning errors.
It is apparent from the evidence in this case that the defendant had repeatedly accepted payments of installments of premiums from the insured after the same were overdue, and, in some instances, after the grace period had expired, and continued to retain them. We pass the question whether the defendant company could be bound by a custom of the local camp with regard to the acceptance and retention of these premiums or with regard to the manner in which they were transmitted to the defendant. The point pressed by plaintiff, in so far as we can see it, is whether or not the defendant itself, through its authorized agent or through its own receipt of premiums and retention of the same, had not adopted a course of dealing between itself and the insured upon which the plaintiff might have the right to rely.
It is to be noted here that apparently all the insured person had to do to restore himself fully to all the privileges of the local Camp, as well as the protection of the insurance, was to pay, while in good health, the installment for want of which he had been suspended. There seems to be no contention here by the defendant that insured was not in good health at the time he paid the last premium.
According to the evidence, this premium was overdue from 1 November to 8 December. The insured died nine days thereafter. It seems highly probable that except for the information of the death of the insured, contained in the proof of death, the defendant would have retained the payment in token of waiver of its nonpayment at the time when it was due, and in token of the automatic restoration of the insured to all the rights of the Order and the protection of the insurance.
Nothing in plaintiff's evidence would justify taking the case from the jury on the theory that insured met his death while in violation of law.
Ordinarily exceptions to the exclusion of evidence are not tenable here unless a record is kept of what the witness would have sworn, so that *Page 568 
the Court may judge of its materiality. Whether that rule is invariable we do not have to consider, since under a retrial a different mode of developing plaintiff's case may be adopted.
Considered in its most favorable light to the plaintiff, we think the evidence should have been submitted to the jury.
The judgment of nonsuit is, therefore,
Reversed.